In the Matter of RICHARD S., Appellant. COMMISSIONER OF MENTAL HEALTH, Respondent. [776 NYS2d 604]—

Rose, J. Appeal, by permission, from an order of the County Court of St. Lawrence County (Nicandri, J.), entered April 22, 2003, which granted petitioner's applications pursuant to CPL 330.20 to continue to retain respondent at a nonsecure psychiatric facility.

While on probation after pleading guilty to manslaughter in the second degree for killing a male sex partner in 1978, respondent was charged with attempted murder in the second degree for stabbing a 15-year-old boy during a sexual encounter in 1980. In 1981, respondent pleaded not guilty by reason of mental disease or defect to that charge. At that time, he was diagnosed as suffering from atypical psychosis, substance abuse

disorder and a psychosexual disorder. Respondent was placed in petitioner's custody for a period of six months and confined in various state mental facilities for the next 22 years pursuant to a succession of CPL 330.20 (9) retention orders. During his confinement, respondent disclosed his participation in other incidents of sexual violence, including the murder of another male sex partner in 1979. Although respondent's conviction for that murder was reversed on appeal because his incriminating statements were deemed unreliable, he never denied taking the victim's life.

In 2002, the Court of Appeals found a dangerousness component to be inherent in CPL 330.20 (1) (d) and remanded the matter of respondent's retention under a 1999 order to Supreme Court, Orange County, for further inquiry as to the factors relating to dangerousness (*Matter of David B.*, 97 NY2d 267, 280 [2002]). On remand, Supreme Court found the requisite dangerousness and again ordered respondent's retention. In January 2003, following a hearing, petitioner's applications for further retention were granted by County Court, St. Lawrence County, based on findings that respondent is presently dangerous and mentally ill. Respondent appeals, with permission, from the resulting order confining him in a nonsecure facility for a period of two years.

Citing the conflicting opinions of the psychiatric experts called by petitioner and respondent as to whether he is mentally ill and poses a danger to others, respondent argues that the evidence is insufficient to support County Court's finding that he suffers from a mental illness warranting confinement. Upon review, our task is to determine whether petitioner established, by a fair preponderance of the credible evidence, that respondent meets the criteria for retention in a nonsecure facility under CPL 330.20 (1) (d) (*see Matter of David B., supra* at 278-279). In doing so, we will afford due deference to the findings of fact and credibility determinations made by County Court (*see Matter of George L.*, 85 NY2d 295, 305 [1995]).

In *David B.*, the Court of Appeals outlined the factors justifying an insanity acquittee's retention in a nonsecure facility by first reviewing the higher level of dangerousness necessary to retain a person in a secure facility under CPL 330.20 (1) (c) (*see e.g. Matter of George L., supra* at 308) and then holding that similar factors indicative of dangerousness must be present, but need not be as pronounced, for the "next step-down level of confinement . . . in non-secure facilities" (*Matter of David B., supra* at 278, 279). The Court of Appeals summarized those factors as follows: "Thus, in addition to recent acts of violence and

the risk of harm to the [acquittee] or others that would be occasioned by release from confinement, a court may consider the nature of the conduct that resulted in the initial commitment, the likelihood of relapse or a cure, history of substance or alcohol abuse, the effects of medication, the likelihood that the patient will discontinue medication without supervision, the length of confinement and treatment, the lapse of time since the underlying criminal acts and any other relevant factors that form a part of an insanity acquittee's psychological profile" (*id.* at 278-279).

In support of retention, petitioner presented the testimony of two psychiatrists who participated in respondent's evaluation and treatment at the St. Lawrence Psychiatric Center, where he has been confined since 2001. Jacqueline Johnson, the Clinical Director of the Center, testified that respondent has a very complex psychiatric condition and currently meets the criteria for four intertwined disorders: sexual sadism, gender identity disorder, antisocial personality disorder and borderline personality disorder. Johnson stated that these diagnoses are supported by respondent's history and confirmed by recently observed behavior. Johnson noted that respondent's diagnoses have also included poly-substance abuse in institutional remission. Johnson testified that respondent's sexual sadism—his most dangerous condition—is shown by his history of achieving sexual gratification only through acts of violence or fantasies of such acts. Johnson testified that sexual sadism is a chronic condition which usually worsens over time and is difficult or perhaps impossible to fully treat. Johnson further indicated that respondent has refused the use of objective measures to evaluate his condition, is not open to treatment for it and denies that he is a sexual sadist. On this basis, Johnson opined that respondent has not moved beyond the first step of treatment for sexual sadism.

When asked for recent evidence of respondent's dangerousness, Johnson cited his inability to control his anger on numerous occasions which intimidated other patients and staff, and what she called his "unkind manipulation" of his peers. Johnson also explained that respondent is a highly intelligent person who is manipulative, lies to protect himself and cannot accept anything bad about himself. Johnson further testified that the divergent opinions among the Center's staff as to whether respondent still suffers from a mental illness are the result of his ability to present himself in ways that evoke favorable opinions of his condition in some staff members. Johnson indicated that the conflicting expert opinions are themselves evidence of his borderline personality disorder.

A second psychiatrist called by petitioner was Zubulon Taintor, who agreed with the diagnoses identified by Johnson and opined that respondent requires inpatient psychiatric care. As to respondent's sexual sadism, Taintor stated that there has been no progress in treatment due to respondent's denial of his condition and cited several examples of that denial. Taintor attributed the opinion of other members of respondent's treatment team that he does not have a dangerous mental disorder and is a "model patient" to respondent's ability to charm people, tell them what they want to hear and further his agenda to appear as a model patient in order to obtain release. Taintor found the instances cited by Johnson when respondent was unable to control his anger to be "all the more striking" because of his concerted efforts to demonstrate that he is no longer mentally ill. Taintor also expressed concern about respondent's likely resumption of substance abuse upon release because he never participated in a substance abuse treatment program, although directed to do so, and such substances would be much more available if he were not institutionalized.

The record also includes a written psychiatric evaluation of respondent, dated February 11, 1998, prepared by Gene Abel, a consulting psychiatrist. Abel explored respondent's history of sexual sadism and referred to an earlier report, which is also in the record, by Barbara Kirwin, a licensed psychologist. Kirwin reported that in 1987, respondent was again having sadistic fantasies during masturbation six or seven times each day, reaching orgasm only when he visualized stabbing his bound male victim to death. Abel stated that at the time of his report, however, respondent claimed complete control over his fantasies, and self-reported that his current fantasies are nonviolent and nearly all involve adult females. While Abel concluded that respondent no longer had any conscious sadistic interests, he also opined that it would be extremely unusual to have sadistic arousal completely disappear on both the conscious and unconscious levels. Because substance abuse may be associated with triggering unconscious issues, Abel further stated that respondent's abuse of substances at any time in the future "would be exceedingly dangerous." Other evidence confirmed that respondent's substance abuse contributed to his violent behavior by numbing his feelings or altering his state of consciousness, and that he possessed homosexual pornography containing elements of sadism in 1996, which Johnson viewed as showing his lack of insight and very poor judgment, and had actual or attempted sexual contacts with male patients as recently as 2001.

Although respondent offered contrary expert evidence as to

his mental condition, we cannot agree that the conflicting opinions precluded County Court from finding that respondent's retention in a nonsecure facility was necessary. The testimony of two of respondent's expert witnesses indicates that their opinions were affected by their professional biases. One witness declined to attribute a mental illness to respondent because he felt that an optimistic assessment was more therapeutic for the patient. Another witness qualified his testimony by stating that he believed the civil retention process in general to be a charade. This witness later conceded that respondent has a sadomasochistic neurotic condition and opined that, if released, respondent would present a risk of harm to those in the homosexual sadomasochistic subculture. Another expert stated that respondent may have a covert mental illness and could not predict how respondent would react if released. Yet another of respondent's own experts testified that if respondent were to resume use of drugs and alcohol, "it's just a matter of time before he re-offends."

Taking into account all the expert opinions in the record, we conclude that County Court's findings of a mental illness and dangerousness are supported by a strong preponderance of the credible evidence. The testimony of Johnson and Taintor amply supports the conclusion, which is implicit in County Court's decision, that respondent is not cured, treatment is essential for his psychological welfare and the safety of others, and he is unable to comprehend the need for such treatment (*see Matter of David B.*, 97 NY2d 267, 278 [2002], *supra*). County Court therefore correctly concluded that respondent meets all the criteria for retention in a nonsecure facility.

Respondent's remaining contention, that his continued confinement is improper because he was not shown to have any "volitional impairment" or difficulty controlling his behavior, has been considered and found to be without merit.

Crew III, J.P., Peters, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, without costs.