In the Matter of STEPHEN W. COMMISSIONER OF MENTAL HEALTH, Appellant; STEPHEN W., Respondent. [934 NYS2d 588]—

Garry, J.

Respondent is diagnosed with paranoid schizophrenia and a related medical condition known as polydipsia that compels him to drink dangerously large amounts of water. In 1980, he was found not responsible by reason of mental disease for assault in the second degree, robbery in the first degree, and other charges. He was thereafter confined to a secure facility upon a finding that he suffered from a dangerous mental disorder (*see* CPL 330.20 [1] [c]; [6]), and later transferred to a nonsecure facility

(*see* CPL 330.20 [11]). During periods of release between 1982 and 1988, he was arrested three times for, among other offenses, harassment, burglary and reckless endangerment, resulting in several periods of incarceration and confinement in psychiatric facilities. He was last released to the community in 1988 and, shortly thereafter, violated his conditions of release by escaping to Florida. Upon his return to New York, he was transferred several times between nonsecure and secure facilities. Since 1992, he has remained in nonsecure facilities pursuant to a series of subsequent retention orders (*see* CPL 330.20 [9]). Respondent presently resides at the Capital District Psychiatric Center (hereinafter CDPC), and has periodically been subject to orders permitting the involuntary administration of medication (*see generally Rivers v Katz*, 67 NY2d 485 [1986]).

In March 2010, petitioner commenced this proceeding seeking another subsequent retention order.[1] Following a hearing, Supreme Court found that respondent did not have a dangerous mental disorder but that he suffered from a mental illness, and that continued treatment was essential, but that this should take place in a nonconfinement or nonhospital setting. The court denied the application for retention conditioned upon respondent's admission to a specified voluntary residential treatment facility, directed petitioner to make every effort to place respondent therein as soon as possible, and ordered respondent's confinement to continue until such placement. Finally, the court directed that if respondent could not be placed in the named facility despite good faith efforts, an "order of confinement" was granted. By permission of this Court, petitioner appeals.

Supreme Court's order does not comply with the statutory directives, and so must be modified. The framework for confinement of individuals acquitted of committing a crime by reason of mental disease or defect is set forth in CPL 330.20 (*see Matter of David B.*, 97 NY2d 267, 276 [2002]). No authority for conditional retention appears in CPL 330.20, nor does the statute authorize the court to direct an insanity acquittee to be placed in any particular facility.[2] The order improperly intrudes upon petitioner's discretion to make professional treatment de-

---

1. A separate application was also filed for the renewal of respondent's *Rivers* order, to which respondent consented.

2. A recommendation as to "*the type of* residence in which the patient is to live" must be included in an order of conditions, but this recommendation is made as part of a service plan prepared by a psychiatrist familiar with the respondent's case, rather than by the court (Mental Hygiene Law § 29.15 [g] [2] [emphasis added]; *see* CPL 330.20 [9], [12]). In any event, no order of conditions was issued here.

cisions, and exceeds the statutory authority (*compare Matter of Chenier v Richard W.*, 82 NY2d 830, 831-832 [1993]; *Matter of Jerome G.*, 201 AD2d 562, 562-563 [1994]). Further, the determination was apparently based in part upon the erroneous belief that respondent could readily be returned to petitioner's custody if his placement in the specified facility were unsuccessful. In fact, if placed in the specified voluntary residential treatment program, respondent would have been free to leave, and then could only be returned to petitioner's custody upon an application to the court demonstrating that he had become dangerously mentally disordered—that is, the higher standard requiring treatment in a secure facility (*see* CPL 330.20 [14]; *Matter of Jill ZZ.*, 83 NY2d 133, 138 [1994]).

Further, we find the order unsupported by the record (*see Matter of Norman D.*, 3 NY3d 150, 155 [2004]). To justify respondent's continued placement, petitioner was required to show that he met the criteria for mental illness as defined by CPL 330.20 (1) (d) in that "(1) [his] illness is of a kind that requires inpatient care and treatment, (2) care and treatment of the illness are essential to [his] welfare, and (3) because of impaired judgment [he] does not understand the need for such care and treatment" (*Matter of David B.*, 97 NY2d at 277 [emphasis omitted]). These criteria satisfy the constitutional requirement of dangerousness in the context of retention in a nonsecure facility, although a higher level of dangerousness must be shown to support initial commitment or retention in a secure facility (*see id.* at 277-278; *see also Matter of Jamie R. v Consilvio*, 6 NY3d 138, 152 n 12 [2006]; *see generally Matter of George L.*, 85 NY2d 295 [1995]). In determining whether an acquittee meets these criteria, the court may consider, in addition to recent violent acts and the risk of harm to the acquittee or others attendant upon release, " 'the nature of the conduct that resulted in the initial commitment, the likelihood of relapse or a cure, history of substance or alcohol abuse, the effects of medication, the likelihood that the patient will discontinue medication without supervision, the length of confinement and treatment, the lapse of time since the underlying criminal acts and any other relevant factors that form a part of an insanity acquittee's psychological profile' " (*Matter of Richard S.*, 6 AD3d 1039, 1041 [2004], *appeal dismissed* 3 NY3d 700 [2004], quoting *Matter of David B.*, 97 NY2d at 279).

Here, respondent's treating psychiatrist testified unequivocally that continued hospital care and treatment were essential to respondent's well-being because of his active symptoms of paranoid schizophrenia, lack of insight into his illness, impaired

judgment and limited compliance with treatment. She testified that a residential facility would not provide the degree of supervision and monitoring that respondent requires and that, in view of his condition, there was no reasonable alternative to continued retention and treatment. The psychiatrist testified that violence was a consistent characteristic of respondent's illness; in addition to the acts that precipitated his initial confinement, he had, among other things, obtained and discharged a gun during a period of release, assaulted a nurse in a treatment facility and threatened harm against his former wife. Within the few weeks immediately prior to the retention hearing, he had threatened staff members with violence and had punched another patient. She further testified that respondent was often verbally abusive toward others and that this tended to provoke altercations.

As to his compliance with his treatment regimen, the psychiatrist testified that respondent took prescribed medication when subject to a *Rivers* order but, when no such order was in effect—for example, during the month prior to the retention hearing—he refused to take oral medications or hid them in his cheek or pockets. According to the psychiatrist, respondent repeatedly stated that he believed he was not mentally ill and did not require medication. Additionally, she described his participation in therapy sessions as inconsistent, and stated that he was noncompliant with facility rules pertaining to smoking and sexual behavior. Finally, the psychiatrist testified that respondent did not appreciate the gravity of his polydipsia, which, if uncontrolled, could cause water intoxication and seizures and was potentially life-threatening. Petitioner also presented respondent's hospital records and written findings of respondent's treatment team, which supported and amplified the psychiatrist's testimony.

In rebuttal, respondent offered only his own testimony, which served to confirm rather than rebut significant aspects of the psychiatrist's testimony. As to his treatment compliance, respondent testified that he was overmedicated, and that whether he needed medication at all was "kind of a mystery." He acknowledged that he sometimes skipped medications or delayed taking them and that when he was unmedicated, "after a while something does tend to happen." He testified that he would accept medication when subject to a *Rivers* order but, in the absence of an order, would do so only in "a limited amount," explaining that discontinuing his medication posed no immediate threat because "it takes maybe six months before something might happen." As to his polydipsia, respondent's testimony

fully confirmed the psychiatrist's opinion that he did not understand its gravity; he admitted that he sometimes drank more water than he needed but claimed that concern over any attendant risk was unrealistic because he did not "have a real chronic problem" and, if released, "would know if [he] was drinking too much and would quit it."

The record contains no evidence controverting the opinion of petitioner's psychiatrist that respondent is mentally ill and requires continued hospital treatment (*see Matter of Lamont D.*, 9 AD3d 630, 631 [2004], *lv denied* 3 NY3d 609 [2004]; *compare Matter of Sharone T. [Rochester Psychiatric Ctr.]*, 33 AD3d 87, 90-93 [2006]). When reviewing a commitment or retention determination involving an insanity acquittee, the authority of this Court is as broad as that of Supreme Court, and we may render the judgment warranted by the record (*see Matter of Jeremiah S. [New York State Commr. of Mental Health]*, 69 AD3d 730, 732 [2010]; *Matter of Mental Hygiene Legal Servs. ex rel. James U. v Rhodes*, 195 AD2d 160, 161 [1994]). We find that petitioner met its burden to demonstrate "by a fair preponderance of the credible evidence, that respondent meets the criteria for retention in a nonsecure facility under CPL 330.20 (1) (d)" (*Matter of Richard S.*, 6 AD3d at 1040; *see Matter of Jerriell O.*, 288 AD2d 313, 314 [2001]; *compare Matter of Michael RR.*, 284 AD2d 786, 787-791 [2001]), and accordingly, the application must be granted.

Peters, J.P., Spain, McCarthy and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as conditionally denied petitioner's application for a subsequent retention order; application granted; and, as so modified, affirmed.