■ In the Matter of AMIR F. DELAWARE COUNTY DISTRICT ATTORNEY, Respondent; AMIR F., Appellant. [941 NYS2d 352]—

Garry, J. Appeal, by permission, from an order of the County Court of Delaware County (Becker, J.), entered October 22, 2010, which, in a proceeding pursuant to CPL 330.20, found that respondent has a dangerous mental disorder and committed him to the custody of the Commissioner of Mental Health for a period of six months.

In June 2008, respondent forced his way into the home of a former girlfriend (hereinafter the victim) and threw her down onto a porch floor. In the course of the incident, she suffered a back injury and broken bones in her foot. Respondent was subsequently charged with burglary in the first degree, unlawful imprisonment in the second degree, assault in the third degree, and criminal mischief in the fourth degree. County Court dismissed the assault charge, accepted respondent's plea of not responsible by reason of mental disease or defect to the remaining charges (*see* CPL 220.15), and ordered respondent to undergo psychiatric examination to determine if he had a dangerous mental disorder or was mentally ill (*see* CPL 330.20 [1] [e]; [2]). At the commitment hearing, a psychiatrist and psychologist who had conducted court-ordered examinations testified that respondent suffered from a dangerous mental disorder; a psychologist testified on respondent's behalf that he was mentally ill and required inpatient psychiatric treatment, but did not suffer from a dangerous mental disorder. The court found that respondent had a mental illness, but deferred ruling on the issue of dangerousness pending an additional psychiatric

examination (*see* CPL 330.20 [15]). The hearing continued thereafter with testimony relative to this additional report. County Court determined that respondent suffered from a dangerous mental disorder and committed him to the custody of the Office of Mental Health for confinement in a secure psychiatric hospital for six months. Respondent appeals.*

To support a determination that a person suffers from a dangerous mental disorder requiring commitment in a secure facility, a district attorney must demonstrate by a fair preponderance of the evidence that the person is mentally ill as statutorily defined and, because of that illness, "currently constitutes a physical danger to himself [or herself] or others" (CPL 330.20 [1] [c]; *see* Mental Hygiene Law § 1.03 [20]; *Matter of Eric U.*, 40 AD3d 1148, 1149 [2007], *lv denied* 9 NY3d 809 [2007]; *Matter of Arto ZZ.*, 24 AD3d 947, 947-948 [2005], *lv denied* 6 NY3d 707 [2006]). Respondent concedes that he has a mental illness; the sole issue is whether he suffers from a dangerous mental disorder and thus requires confinement in a secure facility. This determination "must be based on more than expert speculation" about dangerousness, and may be shown by presenting "proof of a history of prior relapses into violent behavior, substance abuse or dangerous activities upon release or termination of psychiatric treatment, or upon evidence establishing that continued medication is necessary to control [the respondent's] violent tendencies and that [he or she] is likely not to comply with prescribed medication because of a prior history of such noncompliance or because of threats of future noncompliance" (*Matter of George L.*, 85 NY2d 295, 307, 308 [1995]; *accord Matter of Eric U.*, 40 AD3d at 1150).

The psychiatrist and psychologist who conducted the initial psychiatric examinations noted respondent's history of violent behavior—including, among other incidents, a prior discharge from employment at a nursing home after he threatened a patient with a table knife—as well as previous psychiatric hospitalizations, long-term abuse of substances such as alcohol, LSD, marihuana and mushrooms, obsessive behaviors, and failure to acknowledge his mental illness or comply with treatment and medication regimens. They further noted his "obsessive[ ] preoccup[ation]" with the victim, who had broken off a brief romantic relationship with respondent approximately four years earlier and had been pursued by him thereafter. At the time of

* Although the commitment order has expired, respondent's appeal is not moot as the classification affects all future proceedings concerning his commitment (*see Matter of George L.*, 85 NY2d 295, 302 n 2 [1995]; *Matter of Eric U.*, 40 AD3d 1148, 1149 n [2007], *lv denied* 9 NY3d 809 [2007]).

the confrontation, respondent accused the victim of sending him coded messages through the Internet; after his arrest, he told a police officer that he should have killed the victim. In mitigation, the examining experts noted, among other things, that respondent did not use a weapon during the altercation, had no prior arrests or convictions, had not engaged in predatory sexual behavior, and had maintained sobriety for 12 years after joining Alcoholics Anonymous. Evaluating these facts, both experts concluded that respondent suffered from a dangerous mental disorder and required confinement in a secure facility.

Subsequently, the psychiatrist who conducted the additional examination testified that respondent minimized the seriousness of his offense; he regretted his actions only because he had gotten into trouble and "[the victim] could have shot [him]," rather than because of the harm he had caused. This psychiatrist opined that respondent had significant problems with impulse control, as revealed after his arrest by numerous incidents involving disruptive, threatening or dangerous behavior such as cutting himself with a razor blade. This expert stated that although respondent had previously sought therapy, he had never remained in any treatment program long enough to benefit therefrom, and had a history of discontinuing his medication following psychiatric hospitalizations. Further, this expert opined that respondent did not understand his psychiatric symptoms and minimized their seriousness. He also concluded that respondent continued to suffer from a dangerous mental disorder and required treatment in a secure setting.

In opposition, respondent presented, at both hearings, the testimony of a licensed psychologist who had interviewed him on several occasions, reviewed the records and reports, and conducted psychological tests. Respondent's expert testified that respondent suffered from depression, delusional disorders and other conditions that were not grounded in anger or aggression and did not place him at risk of committing future violence. He noted that respondent had not previously been identified as dangerous despite his lengthy history of psychiatric problems, and that he had repeatedly sought treatment for his mental illness. The expert observed that respondent did not confront the victim because he intended to harm her, but because he wanted to talk to her; he opined that respondent's mental status had improved since the altercation and that he recognized his responsibility for his actions and felt regret for his poor decisions. He concluded that respondent required psychiatric treatment but did not present an imminent threat to himself or others, and could be treated in a nonsecure facility.

This Court's authority in reviewing a commitment determination pursuant to CPL 330.20 is as broad as that of the trier of fact, and we may render the determination warranted by the record (*see Matter of Stephen W.*, 90 AD3d 1166, 1170 [2011]). However, we also defer to County Court's factual findings, in light of that court's opportunity to observe respondent's behavior and assess the credibility of the conflicting experts in determining the weight to be accorded to their testimony (*see Matter of George L.*, 85 NY2d at 305; *Matter of Eric U.*, 40 AD3d at 1149). This is particularly important in a close case such as this. According deference, we find adequate support in the record to conclude that petitioner met the statutory burden of demonstrating that respondent constitutes a physical danger to himself or others and requires commitment in a secure facility. Accordingly, the order will not be disturbed.

Peters, J.P., Rose, Kavanagh and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

