Matter of Jerry P. (2023 NY Slip Op 04247)

Matter of Jerry P.

2023 NY Slip Op 04247

Decided on August 10, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 10, 2023

CV-22-2361
[*1]In the Matter of Jerry P. Commissioner of the Office for People with Developmental Disabilities, Appellant; Jerry P., Respondent, and Kings County District Attorney, Appellant.

Calendar Date:June 7, 2023

Before:Lynch, J.P., Clark, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for Commissioner of the Office for People with Developmental Disabilities, appellant.
Eric Gonzalez, District Attorney, Brooklyn (Avshalom Yotam of counsel), for Kings County District Attorney, appellant.
Sheila E. Shea, Mental Hygiene Legal Service, Albany (Shannon L. Stockwell of counsel), for respondent.

Fisher, J.
Appeals (1) by permission, from an order of the Supreme Court (John T. Ellis, J.), entered November 18, 2022 in Franklin County, which dismissed petitioner's application, in a proceeding pursuant to CPL 330.20, for a subsequent retention order, and (2) by permission, from an order of said court, entered March 1, 2023 in Franklin County, which, upon reargument, adhered to its prior decision dismissing the petition.
Respondent Jerry P. (hereinafter respondent) is an individual with intellectual and psychiatric disorders who has resided in facilities or residences operated by the Office for People with Developmental Disabilities (hereinafter OPWDD) since childhood. In 2013, respondent was charged by indictment with criminal sexual act in the first and third degrees, sexual abuse in the first degree, sexual misconduct and harassment in the second degree, stemming from an incident that occurred at a group home operated by OPWDD. In 2017, Supreme Court (Foley, J.) accepted respondent's plea pursuant to CPL 220.15 of not responsible by reason of mental disease or defect and, following a psychiatric examination (see CPL 330.20 [2]), the court waived the initial hearing and issued a commitment order pursuant to CPL 330.20 (6) that respondent was suffering from a "dangerous mental disorder" as defined by CPL 330.20 (1) (c). A first retention order was issued in November 2017, whereby respondent consented to the finding that he was still suffering from a dangerous mental disorder.
In October 2018, OPWDD filed an application for a two-year subsequent retention order,[FN1] asserting that respondent no longer suffered from a dangerous mental disorder but that he was still "mentally ill" as defined by CPL 330.20 (1) (d) in that respondent continued to require in-patient care and treatment in a school for the developmentally disabled. Although respondent initially demanded a hearing on his continued retention, ultimately Supreme Court (Feldstein, J.) granted such order upon the consent of respondent Kings County District Attorney, OPWDD and respondent. The parties similarly consented to subsequent retention orders in September 2020 and April 2021, which were granted by Supreme Court (Ellis, J.), without a hearing. However, in May 2022, after OPWDD filed an application for a two-year retention order, respondent demanded a hearing on his continued retention. A fact-finding hearing ensued, whereafter Supreme Court found that OPWDD failed to establish by a fair preponderance of the evidence that respondent was "mentally ill" within the meaning of CPL 330.20 (1) (d), specifically as it relates to whether respondent was suffering from a "developmental disability," and therefore denied OPWDD's petition for a subsequent retention order and, resultantly, issued a release order and order of conditions. OPWDD moved to reargue, contending, among other things, that collateral estoppel barred relitigation of respondent's developmental disability. Supreme Court considered that [*2]narrow issue and adhered to its prior decision, and this appeal ensued.[FN2]
Following his plea of not responsible by reason of mental disease or defect, respondent became an insanity acquittee subject to the statutory scheme laid out in CPL 330.20 (see Matter of Stephen W., 90 AD3d 1166, 1167 [3d Dept 2011]). A petitioner seeking to continue to retain an insanity acquittee in a nonsecure facility has the burden to establish, by a fair preponderance of the credible evidence, that the acquittee is "mentally ill," which it may satisfy by showing that the acquittee has a developmental disability and is in need of the care and treatment provided to residents at OPWDD's in-patient facilities (see CPL 330.20 [1] [d]; [9]; Matter of Arto ZZ., 121 AD3d 1272, 1273-1274 [3d Dept 2014], lv denied 24 NY3d 1050 [2014]; Matter of Stephen W., 90 AD3d at 1170). An insanity acquittee has a developmental disability if he or she "has a disability attributable to neurological impairment that originated before [the] respondent's 22nd birthday and [such] disability has continued or will continue for an indefinite period and substantially handicaps [the acquittee's] ability to function normally in society" (Matter of Daniel XX., 20 AD3d 759, 760 [3d Dept 2005], lv denied 6 NY3d 701 [2005]; see Mental Hygiene Law § 1.03 [22]). "In reviewing a CPL 330.20 commitment determination, this Court's authority is as broad as that of the trial court and we may render any determination warranted by the record, though we defer to the trial court's factual and credibility findings" (Matter of James Q., 192 AD3d 1370, 1372 [3d Dept 2021] [internal quotation marks and citations omitted]).
Having reviewed the record, we find that Supreme Court erred in concluding that respondent did not have a "developmental disability" as defined by Mental Hygiene Law § 1.03 (22), and, therefore, was not "mentally ill" under CPL 330.20 (1) (d). OPWDD's expert psychologist — the only expert witness produced at the hearing — testified that respondent suffered from various emotional and cognitive disorders, including a developmental disability, and that respondent was therefore mentally ill as defined by CPL 330.20 (1) (d). Although the basis for the expert's opinion was premised on information in his report, which also included background information, diagnoses from other psychologists, narratives and test results from unknown sources spanning over almost six decades, the record establishes that respondent's witness, a treating psychiatrist, also relied on similar information in testifying and formulating his opinions, evaluation and treatment for respondent. Specifically, at several points during the hearing, respondent's counsel candidly asked the treating witness to explain how respondent's developmental disability affected his mental state and how his developmental disability was tied to his cognitive defects. The witness then testified as to respondent's developmental disability and how it affected [*3]or played a role in his conduct, behavior, understanding or how it impacted his other diagnosed impairments. Indeed, respondent did not refute before Supreme Court or on appeal that he has a developmental disability,[FN3] but rather raised objections to the hearsay contained in OPWDD's expert report. Based on the testimony by OPWDD's expert that he relied on certain pedigree information and the diagnoses from other mental health professionals in the report to formulate his opinion, with no other means available to him related to respondent's testing during the developmental period in the 1960s and 1970s,[FN4] it was an error to not apply the professional reliability exception to such hearsay (see Hinlicky v Dreyfuss, 6 NY3d 636, 648 [2006]; Delosh v Amyot, 186 AD3d 1793, 1796 [3d Dept 2020]). Therefore, Supreme Court erred in affording this information in the expert's report no weight.
Given this, the report and testimony of OPWDD's expert established that respondent has a neurological impairment that was onset prior to his 22nd birthday, that such impairment has continued or will continue for an indefinite period and substantially handicaps his ability to function normally in society (see Mental Hygiene Law § 1.03 [22] [a]-[d]), and that this significant cognitive impairment requires in-patient care and treatment in a facility run by OPWDD (see CPL 330.20 [1] [d]). The expert further confirmed several diagnoses, explained his findings from an interview with respondent and acknowledged the daily monitoring notes. Although respondent proffered the testimony of several providers and witnesses who testified as to the positive improvements that respondent has made during the course of his current retention period, some of this testimony was undermined by the witnesses' lack of knowledge of other concerning behaviors or respondent's history of deteriorating when supports were removed in less-secure facilities. This specifically includes the fact that the instant offense occurred shortly after respondent was released to a group home from a more secure facility. Moreover, based on this information and the opinion of OPWDD's expert that respondent would present a danger to his peers if released to a group home, we find that OPWDD had established by a preponderance of the evidence that respondent is mentally ill as defined by CPL 330.20 (1) (d). Accordingly, Supreme Court should have granted the petition and issued a subsequent retention order authorizing the continued custody of respondent by OPWDD in a facility not designated as secure until at least April 20, 2024. To the extent that the order of release and order of conditions are no longer appropriate (see CPL 330.20 [12]), Supreme Court must comply with its obligations under CPL 330.20 (9).
In light of such determination, any arguments addressing Supreme Court's order addressing petitioner's motion to reargue have been rendered academic (see Matter of Police Benevolent Assn. of N.Y. State, Inc. v State of [*4]New York, 165 AD3d 1434, 1437 [3d Dept 2018]; Matter of Soressi v SWF, L.P., 81 AD3d 1143, 1146 [3d Dept 2011]). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Lynch, J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order entered November 18, 2022 is modified, on the law, without costs, by reversing so much thereof as dismissed the petition and found that respondent Jerry P. does not continue to be mentally ill under CPLR 330.20 (1) (d); petition granted in its entirety; and, as so modified, affirmed.
ORDERED that the appeal from the order entered March 1, 2023 is dismissed, as academic, without costs.

Footnotes

Footnote 1: Such application also sought a transfer order.

Footnote 2: This Court granted OPWDD's motion for permission to appeal from the denial of the subsequent retention order, and granted a stay pending appeal pursuant to CPL 330.20 (21) (a) (i) and (d). Thereafter, this Court granted OPWDD's motion for permission to appeal the second order and to consolidate both appeals.

Footnote 3: Tellingly, respondent's counsel at oral argument conceded that respondent should not be treated by the Office of Mental Health, but should remain under the auspices of OPWDD, therefore acknowledging that respondent's course of treatment has operated under the presumption of a developmental disability.

Footnote 4: OPWDD's expert expressed frustration during the hearing when asked to identify which diagnoses he made based on clinical records and his interview of respondent, while having to ignore the opinions of other psychologists and respondent's history.